IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHERYL FRITZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-03365-SRB |
| | ) | |
| CORIZON HEALTH, INC., and | ) | |
| CORIZON, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Plaintiffs Sheryl Fritz, Jamie Terry, and Jessica Williams's (collectively, "Plaintiffs") Motion for Rule 23 Class Certification (Doc. #209) and Defendants Corizon Health, Inc. and Corizon, LLC's (collectively, "Corizon") Motion to Strike the Declaration of L. Scott Baggett (Doc. #223). The Court held oral argument on the motions on August 27, 2021. For the reasons discussed below, Plaintiffs' motion is GRANTED and Corizon's motion is DENIED.

**I. BACKGROUND**

The following facts are taken from Plaintiffs' First Amended Collective Action and Class Action Complaint (Doc. #105) and from the parties' briefs and attached exhibits.[1] Corizon provides medical care and pharmacy services to inmates in correctional facilities located throughout the United States, including Missouri. Plaintiffs are Correctional Nurses who have been or currently are employed by Corizon at one of the correctional centers in Missouri.

---

[1] Only those facts necessary to resolve the pending motions are discussed below, and those facts are simplified to the extent possible. Further relevant facts are discussed in Section III.

Plaintiffs allege that Corizon enforces a uniform, company-wide policy and practice of requiring Correctional Nurses to perform various uncompensated pre- and post-shift activities upon entering and leaving correctional facilities, (including, inter alia, submitting to metal detector screenings, physical pat-downs, personal item searches, passing through air locks, fingerprint and/or optical scanning, picking and dropping off keys, accounting for and securing any syringes, needles, or other medical tools and devices). Plaintiffs argue these pre- and post-shift activities are compensable and seek to recover, individually and on behalf of similarly situated Corizon Correctional Nurses, lost wages from Corizon. Plaintiffs assert claims for (1) violation of the Fair Labor Standards Act ("FLSA") and (2) unjust enrichment under Missouri law.

On November 23, 2020, the Court granted conditionally a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA for:

> All current and former nurses employed by defendants who have worked forty (40) or more hours in a seven day period on an hourly, or FLSA exempt, basis between October 15, 2016 through the present, and who have performed pre- and post-shift activity for which they were not paid, regardless of level of licensure. Pre- and post-shift activity means any and all activities performed after entering a correctional institution before clocking in and any and all activities performed after clocking out before exiting the correctional institution.

(Doc. #89.) Plaintiffs now move for class certification of their unjust enrichment claim under Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of:

> All current and former hourly Correctional Nurses who worked in Missouri from October 15, 2014 through the final disposition of this matter, who have pay periods where they did not record more than forty hours in a seven day period, and worked at one of the following locations:
>
> • Boonville Correctional Center
> • Chillicothe Correctional Center
> • Cremer Therapeutic Community Center
> • Fulton Reception & Diagnostic Center
> • Jefferson City Correctional Center

2

- Kansas City Reentry Center
- Maryville Treatment Center
- Missouri Eastern Correctional Center
- Moberly Correctional Center
- Northeast Correctional Center
- Ozark Correctional Center
- Potosi Correctional Center
- South Central Correctional Center
- Southeast Correctional Center
- St. Louis City Criminal Justice Center
- St. Louis City MSI
- Tipton Correctional Center
- Transition Center St. Louis
- Western Missouri Correctional Center
- Western Reception Diagnostic and Correctional Center
- Crossroads Correctional Center

(Doc. #209, pp. 7-8)[2] (the "Missouri Unjust Enrichment Class"). Corizon opposes class certification.

## II. LEGAL STANDARD

Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23 requires a plaintiff to satisfy all four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, a plaintiff "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original).

A district court "must undertake a 'rigorous analysis' to ensure that the requirements of Rule 23 are met." *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011). The Rule 23 analysis will frequently overlap to some extent with the merits of the underlying claims. *Dukes*, 564 U.S. at 351. However, there are limits to a court's analysis of the merits of a matter at the

---

[2] All page numbers refer to the pagination automatically generated by CM/ECF.

class certification stage. "A court's inquiry on a motion for class certification is 'tentative,' 'preliminary,' and 'limited.'" *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

## III. DISCUSSION

The Court must "begin by considering the nature of the plaintiffs' claim to determine whether it is suitable for class certification." *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1033 (8th Cir. 2020) (citation omitted). Here, Plaintiffs seek class certification for their Missouri unjust enrichment claim against Corizon. To succeed on a claim for unjust enrichment, Plaintiffs must prove "(1) [the plaintiff] conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. banc 2011). With the nature of the claim in mind, the Court will rigorously analyze the motion for class certification in accordance with the requirements of Rule 23.

### A. Requirements Under Rule 23(a)

Under Rule 23(a), a proposed class must satisfy four elements: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative party are typical of the claims or defenses of the class (typicality); and (4) the representative

4

party will fairly and adequately protect the interests of the absent class members (adequacy). Fed. R. Civ. P. 23(a). Each element is addressed below.

### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." In determining whether the numerosity requirement is satisfied, "the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joinder is relevant." *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987), *cert. granted and judgment vacated on other grounds*, 487 U.S. 1229 (1988) (citing *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559–560 (8th Cir. 1982)).

Plaintiffs estimate the unjust enrichment class size to be at least two hundred and possibly over one thousand Correctional Nurses.[3] Corizon does not refute Plaintiffs' estimated class size, but instead argues that because class members are easily identifiable from Corizon's employment records, joinder is not impracticable. The Court disagrees with Corizon, as joining hundreds if not thousands of plaintiffs is impracticable. *See, e.g.*, *Ark. Educ. Ass'n v. Bd. Of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (twenty class members sufficient); *Paxton*, 688 F.2d at 561 (impracticable to join some portion of the seventy-four class members). Plaintiffs have satisfied the Rule 23(a)(1) numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same

---

[3] Plaintiffs argue that over two hundred potential class members have opted to join the FLSA collective action, and the Missouri class action will likely be larger because Rule 23 does not require members to opt-in and the unjust enrichment claim has a longer statute of limitations than the FLSA claim.

provision of law." *Dukes*, 564 U.S. at 349–50.  The "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.  Commonality "'does not require that every question of law or fact be common to every member of the class . . . and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Downing v. Goldman Phipps PLLC*, No. 13-206 CDP, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015) (quoting *Paxton*, 688 F.2d at 561).

Here, Plaintiffs argue there are many issues common to the class, including: (1) whether the type of pre- and post-shift activities at issue are compensable; (2) whether Plaintiffs conferred a benefit upon Corizon by performing pre- and post-shift activities; and (3) whether it was unjust for Corizon to retain pay for pre- and post-shift activities rather than paying its Correctional Nurses for this time.  The Court agrees.  For the purposes of Rule 23(a)(2),[4] the fact that pre- and post-shift activities were required yet went unpaid creates a common question of fact.  Whether those activities were compensable, and whether Corizon unjustly retained a benefit, are common questions of law.  Plaintiffs have satisfied the Rule 23(a)(2) commonality requirement.

### 3. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The burden of demonstrating typicality is fairly easily

---

[4] While Corizon argues Plaintiffs fail to establish the basic requirements of Rule 23, Corizon does not directly argue the Rule 23(a)(2) commonality requirement, but instead focuses its arguments on whether common questions predominate.  The Court will address these issues in more detail when analyzing Rule 23(b)(3).

met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co*., 64 F.3d 1171, 1174 (8th Cir. 1995) (citing *Paxton*, 688 F.2d at 562). Rule 23(a)(3) "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co*., 554 F.2d 825, 830 (8th Cir. 1977). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

Plaintiffs argue that their claims are typical of those of the putative class members because all claims arise out of Corizon's policy of not paying for pre- and post-shift time, are based on the same legal theories, and no unique defenses apply to Plaintiffs which would make their claims atypical of the class. Corizon argues that Plaintiffs claims are atypical because determining liability and analyzing evidentiary defenses require individualized considerations. The Court agrees with Plaintiffs. Regardless of the alleged factual differences among class members, their claims are typical of Plaintiffs' claims; mainly, Corizon did not pay for pre- and post-shift required activities which unjustly enriched it. Even if some class members made timesheet adjustments or have disparate time estimates, those variations do not defeat the fact that the class members have similar grievances based on the same legal theory. In other words, Plaintiffs are "not alone in [their] dissatisfaction with the employer's unlawful practices so as to assure that there is in fact a class needing representation." *Paxton*, 688 F.2d at 562. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Lopez v. Tyson Foods*, No. 8:06CV459, 2008 WL 3485289, at *18 (D. Neb. Aug. 7, 2008) (quoting *Paxton*, 688 F.2d at 562). The requirement of adequacy "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).[5]

Plaintiffs argue that they are adequate class representatives because they possess the same interests and injuries and have no interests that conflict with the interests of the proposed class members. Corizon argues that Plaintiffs are inadequate class representatives because they have abandoned potential class members and have unique credibility issues. Each argument is addressed in turn.

First, Corizon contends Plaintiffs "inexplicably . . . limit their requested certification to those 'who have pay periods where they did not record more than forty hours in a seven day period.'" (Doc. #218, p. 22.) Because Plaintiffs have "excluded individuals" who have not worked less than forty hours in a pay period, Corizon argues Plaintiffs have "put[] themselves in conflict with other potential nurses and potentially expos[e] [Corizon] to subsequent litigation." (Doc. #218, p. 23.) During oral argument, Plaintiffs explained that Correctional Nurses who have worked 40 hours or more are covered by the FLSA collective action because that action

---

[5] Plaintiffs' attorneys have extensive experience prosecuting wage and hour class actions. (Doc. #209, pp. 11-12.) Corizon does not contest that Plaintiff's' counsel is qualified and committed to represent the class here. Plaintiffs' counsel is adequately competent.

seeks to recover uncompensated overtime pay, while the unjust enrichment claim seeks to recover non-overtime pay.  The Court finds Plaintiffs' proposed class does not abandon potential class members.

Finally, Corizon argues that potential class members opting in the FLSA collective action indicates those individuals want to join the case as party plaintiffs and are interested in prosecuting separate actions.  However, the Court finds that class members opting in the FLSA collective action does not render class certification on the unjust enrichment claim inappropriate.  The two actions are not incompatible, as courts routinely certify state law class actions and FLSA collective actions in the same case.  "District court cases permitting FLSA collective actions to proceed simultaneously with Rule 23 state actions are legion."  *Osby v. Citigroup, Inc.*, No. 04-cv-06085-NKL, 2008 WL 2074102, at *3 n. 2 (W.D. Mo. May 14, 2008) (collecting cases).

Corizon also argues Plaintiffs are inadequate representatives because they "will be required to defend their credibility[.]"  (Doc. #218, p. 22.)  Specifically, Corizon argues Plaintiffs presented conflicting testimony and statements about their claims.  Plaintiffs argue that they did not inconsistently testify.  For example, Plaintiffs note they did not misrepresent the existence of a companywide policy of not paying for security-related pre- and post-shift activities, as "this is exactly what Corizon's 30(b)(6) witnesses confirmed," and Plaintiffs have provided good faith estimates about the security protocols and the time they spent performing these activities.  (Doc. #222, p. 9.)

"For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the

9

Case 6:19-cv-03365-SRB   Document 231   Filed 08/30/21   Page 9 of 18

detriment of the absent class members' claims." *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1144 (W.D. Mo. Apr. 27, 2020) (quoting *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011)). The Court does not find Plaintiffs' credibility is so severely undermined to make them inadequate class representatives. As discussed below, there is evidentiary support for finding that Corizon has a general policy of not compensating the required pre- and post-shift activities. Also, Plaintiffs are only required to provide reasonable time estimations, particularly because Corizon does not record the time it takes Correctional Nurses to perform these activities. *See Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 799 (8th Cir. 2014) ("When an employer has failed to keep proper records, courts should not hesitate to award damages based on the just and reasonable inference from the evidence presented.") (citations and quotation marks omitted). Plaintiffs' credibility does not indicate the class will be inadequately represented here. Accordingly, Plaintiffs have satisfied the Rule 23(a)(4) adequacy requirement.

### B. Requirements Under Rule 23(b)(3)

If Rule 23(a) is satisfied, the party seeking certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast,* 569 U.S. at 33. Plaintiffs move for class certification under Rule 23(b)(3). Federal Rule of Civil Procedure 23(b)(3) requires a finding that:

> The questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

### 1. Common Questions Predominate Individual Questions

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*, 569 U.S. at 34. "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . and goes to the efficiency of a class action as an alternative to individual suits." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016) (internal citations omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. 338 at 350. The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019) (citations and quotation marks omitted).

Plaintiffs argue that the common questions of fact and law which predominate over individual ones is "whether the class members conferred a benefit on Corizon; whether Corizon appreciated a benefit of unpaid work; and whether retaining the benefit is inequitable, and to what degree[.]" (Doc. #222, pp. 3-4.) Corizon argues the key questions of fact and law are "whether it was unjust for [Corizon] to retain whatever benefit the potential class members ostensibly conferred on them" which requires individual inquiry, and damages are not capable of representative proof for the unjust enrichment claim. (Doc. #218, pp. 21, 24.)

Plaintiffs rely, in part, on *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 228 (Mo. App. W.D. 2007), which held that under a Missouri unjust enrichment cause of action, when class

members suffer from the same corporate policy, the focus of the litigation is on the defendant's conduct.  In *Hale*, the plaintiffs brought, among others, a Missouri unjust enrichment class action claim against Wal-Mart to recover wages for hours worked that were unpaid.  *Id.* at 220-21.  The *Hale* court found that, because "all members of the class have been affected by the same alleged corporate-level conduct by the defendants . . . the unjust enrichment claim does not go to the named plaintiffs' conduct but rather Wal-Mart's conduct."  *Id.* at 225-266 (collecting cases approving unjust enrichment claims for class certification).  Plaintiffs allege, similar to the plaintiffs in *Hale*, that Corizon has a uniform policy of requiring but not compensating pre- and post-shift security activities for all class members, regardless of their location and specific job responsibility.  Corizon argues *Hale* is inapplicable in this case because, contrary to their allegations, Plaintiffs were not all affected by the same, uniform corporate policy.  With the "nature of [Plaintiff's] claim" in mind, and after a rigorous analysis of the specifics of this case, the Court finds Corizon had a common corporate policy creating common questions of fact and law which predominate individual issues.  *Harris*, 953 F.3d at 1033.

      Corizon does not dispute that, under normal circumstances, it did not compensate Correctional Nurses for their time performing required security protocols.  Corizon's corporate representatives testify to this fact.  (Doc. #209-2, p. 15.)  However, Corizon contends that some Correctional Nurses had their timesheets adjusted for various reasons which allowed them to be compensated for some time performing the pre- and post-shift activities.  Corizon argues these timesheet adjustments were not consistent across locations or supervisors, and therefore the general policy of not compensating pre- and post-shift time does not predominate individual issues.  The Court disagrees.

The record shows that Correctional Nurses were instructed to arrive in advance of their shift to ensure they can make it through security and clock in on time. (Doc. #209-5, p. 21.) As such, under normal circumstances, the time performing pre- and post-shift activities were not reflected on Correctional Nurses' timesheets. A Correctional Nurse's timesheet was only adjusted when he or she experienced "unusual circumstances," such as an abnormally long security line delay which prevented him or her from clocking in at the start of his or her scheduled shift or in the event of a medical emergency. In these scenarios, Corizon managers would adjust the time the Correctional Nurse actually clocked in to relate back to when the shift was scheduled to start. However, timesheet adjustments were not approved for routine security checks or delays, but instead for those situations which were "unusual . . . . They're one off situations that may occur[.]" (Doc. #209-5, pp. 39-40.)

The Court finds these adjustments do not defeat the predominance requirement. When timesheets were adjusted, Corizon was not compensating its employees for performing pre-shift security protocols, but instead was not punishing its employees when the required pre-shift activities made Correctional Nurses tardy. Plaintiffs argue, and the Court agrees, that "Plaintiffs are not seeking damages for [security] delays, but rather for the estimated time that routine security took on average days *prior [to] the start of class members' shifts*." (Doc. #222, p. 5) (emphasis in original). Rare discrepancies in time adjustments, and when, if at all, they were approved, do not override the predominate commonality of Corizon's uniform corporate policy.[6] Whether that policy unjustly enriched Corizon is the central issue of this litigation. Accordingly,

---

[6] Plaintiffs argue, which Corizon admitted in oral argument, that Corizon's timekeeping system, Kronos, can generate reports showing when particular timesheets were adjusted. Thus, "unusual circumstances" can be readily identified and accounted for on a classwide basis without the need for individual inquiries regarding time adjustment policies.

the Court finds a classwide proceeding is capable of generating common answers apt to drive the resolution of the litigation.

Corizon also argues that the disparity in security protocols by location and job responsibility demonstrates individual inquiries will predominate. However, the Court agrees with Plaintiff that "it is not disputed that each facility required some combination of security-related pre- and/or post-shift activities." (Doc. #222, p. 4.) Common to all class members is whether these security-related activities conferred a benefit on Corizon, and factual variations in the activities does not defeat class certification. *See, e.g., Bouaphakeo*, 765 F.3d at 797 (holding "while individual plaintiffs varied in their donning and doffing routines, their complaint is not dominated by individual issues such that the varied circumstances prevent one stroke determination") (citation omitted, cleaned up). Even if this action "will necessitate a degree of individual inquiries into the harm suffered by class members, common issues relating to Defendants' adoption, implementation, and enforcement of the [common corporate policy] still predominate[.]" *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976, 991 (W.D. Mo 2019). Corizon's policy of not compensating pre- and post-shift activities creates predominate common questions of fact and law.

Finally, Corizon argues that because damages are determined by how "unjust" the retention of a benefit was, the issue of damages will be highly individualized and predominate over common questions. Corizon contends "Plaintiffs cannot simply argue they should be paid for their time entering and leaving workplaces at their agreed rates of pay." (Doc. #218, p. 25.) Corizon largely reiterates the same arguments of disparate security protocols and timesheet adjustments, which for reasons previously explained the Court finds unpersuasive to defeat class certification. For example, Corizon has records of each facility's required pre- and post-shift

14
Case 6:19-cv-03365-SRB    Document 231    Filed 08/30/21    Page 14 of 18

activities which can be presented on a classwide basis.  Further, while the record shows variations in the time estimated to perform the pre- and post-shift tasks, Corizon admits that it "did not record the time nurses spent traversing through security[.]"  (Doc. #218, p. 10.)  Accordingly, Plaintiffs are only required to present "just and reasonable" time estimations.  *Bouaphakeo*, 765 F.3d at 799.  Whether and to what extent each activity conferred a benefit, the time it took to perform the activities, and whether that time should have been compensated are thus capable of class resolution.  The issue of damages is not so individualized as to prevent one stroke determination.

The Court finds the class members are sufficiently cohesive to warrant adjudication by class representation.  Common questions of fact and law predominate over any questions affecting only individual members.  The Court finds Plaintiffs have satisfied the Rule 23(b)(3) predominance requirement.

### 2.  Class Certification is the Superior Method to Adjudicate This Case

"In determining whether a class action is the superior vehicle for litigation, courts consider, inter alia, the difficulties likely to be encountered in the management of the action."  *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-cv-04321-NKL, 2013 WL 3872181, at *12 (W.D. Mo. July 25, 2013).  Plaintiffs argue that class certification is the superior method "[b]ecause all proposed class members are subject to Corizon's policy of not paying for pre- and post-shift activities."  Corizon argues that "each potential class member would essentially need his or her own personal trial" and therefore the goals of class certification would not be met.  (Doc. #218, p. 29.)

The Court finds that class action is the superior method of adjudication.  For example, because Plaintiffs may present reasonable estimates of the average time spent on activities,

15

Case 6:19-cv-03365-SRB   Document 231   Filed 08/30/21   Page 15 of 18

management of the action on a class basis is superior to hundreds of trials which seek to establish the same theory of liability – that is, whether Corizon's policy, which affected all class members, is unjust. Absent class certification, class members would have to engage in unnecessarily repetitive discovery and presentation of common evidence. Because each potential class member's conduct does not predominate over common questions, "certification will not generate any complexities from a case management perspective." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 624 (C.D. Cal. Nov. 16, 2015). Corizon also argues that "hundreds of individuals have expressed an interest in joining the conditionally certified collection action as parties plaintiff under 29 U.S.C. § 216(b)." (Doc. #218, p. 30.) However, as discussed above, class members opting in the FLSA collective action does not make class certification inappropriate based on a state law cause of action. Accordingly, the superiority requirement of Rule 23(b)(3) is satisfied.

### C. Notice Requirements Under Rule 23(c)(2)(B)

For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Plaintiffs propose the same notice procedures approved by the Court for notice of the conditional certification of the FLSA collective action be used here, with a slight modification to address the procedural differences between an FLSA class and a Rule 23 class. Corizon does not argue whether this notice is sufficient. In view of the Court's mandate to direct to class members the best practicable notice, the Court finds it is unable to determine whether Plaintiffs' proposed notice complies with Rule 23(c)(2)(B) at this time. Accordingly, the Court orders the parties to meet and confer to determine agreed upon proper notice procedures.

### D. Motion to Strike

In Plaintiffs' Reply in Support of their Motion for Rule 23 Class Certification, they attach as an exhibit the Declaration of L. Scott Baggett ("Dr. Baggett"). (Doc. #222-1.) Corizon subsequently filed a motion to strike the Baggett Exhibit pursuant to Federal Rule of Civil Procedure 37(c)(1). Federal Rule of Civil Procedure 37(c)(1) provides, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Corizon argues that Plaintiffs failed to disclose Dr. Baggett in their initial Rule 26 disclosures and did not timely supplement their expert disclosures prior to submitting Dr. Baggett's declaration. During oral argument, Corizon did not dispute the accuracy of Dr. Baggett's testimony and admitted that Kronos Corizon's timekeeping system can generate reports regarding when time modifications were made and determine how many Correctional Nurses had work weeks under 40 hours. Accordingly, Plaintiffs' use of Dr. Baggett's testimony was harmless, and the motion is therefore denied as moot.

## IV. CONCLUSION

Accordingly, is it hereby **ORDERED** that Plaintiffs' Motion for Rule 23 Class Certification (Doc. #209) is GRANTED. Plaintiffs' Missouri Unjust Enrichment Class is hereby certified as follows:

> All current and former hourly Correctional Nurses who worked in Missouri from October 15, 2014 through the final disposition of this matter, who have pay periods where they did not record more than forty hours in a seven day period, and worked at one of the following locations:
>
> • Boonville Correctional Center
> • Chillicothe Correctional Center
> • Cremer Therapeutic Community Center

- Fulton Reception & Diagnostic Center
- Jefferson City Correctional Center
- Kansas City Reentry Center
- Maryville Treatment Center
- Missouri Eastern Correctional Center
- Moberly Correctional Center
- Northeast Correctional Center
- Ozark Correctional Center
- Potosi Correctional Center
- South Central Correctional Center
- Southeast Correctional Center
- St. Louis City Criminal Justice Center
- St. Louis City MSI
- Tipton Correctional Center
- Transition Center St. Louis
- Western Missouri Correctional Center
- Western Reception Diagnostic and Correctional Center
- Crossroads Correctional Center

Additionally, it is **FURTHER ORDERED** that the parties shall meet and confer to agree on the proposed notice to potential class members pursuant to Federal Rule of Civil Procedure 23(c)(2)(B). The parties shall also meet and confer to agree upon a new proposed amended scheduling order in light of this Order. The notice and proposed amended scheduling order shall be filed within fourteen (14) calendar days of the filing of this Order. The Court will contact the parties to schedule a hearing regarding the notice and scheduling changes.

Additionally, it is **FURTHER ORDERED** that Corizon's Motion to Strike the Declaration of L. Scott Baggett (Doc. #223) is DENIED as moot.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: August 30, 2021