# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

JESSICA WILLIAMS, SHERYL FRITZ
AND JAMIE TERRY, Individually and on
behalf of all other similarly situated Corizon
Correctional Nurses,

        Plaintiffs,

        v.

CORIZON HEALTH, INC., and
CORIZON, LLC

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 6:19-cv-03365-SRB

## PLAINTIFFS' UNOPPOSED MOTION FOR
## FINAL SETTLEMENT APPROVAL

## INTRODUCTION

On March 9, 2020, the Court issued its Order Granting Preliminary Approval of the

Settlement finding that the Court was likely to approve the settlement. (Doc. 256) ("the Court will

likely be able to approve the Settlement Agreement under Rule 23(e)(2)"). By that Order, the Court

directed the parties to proceed with settlement administration, including mailing and emailing

notice to the Class, according to the terms of the Settlement and the Order.

Notice was sent to all Class Members via mail, and, additionally, via email for individuals

whose email was known. *See* Declaration of Emilio Cofinco (attached as Exhibit 1) (setting out

notice and claims process overseen by the Claims Administrator). The Settlement[1] indicated each

Class Member's anticipated recovery and notified FLSA opt ins that they will be paid without the

need to file a claim and that Rule 23 Class Members who had not opted into the case may file a

---

[1] The Settlement Agreement is Attached as Exhibit 2.

1

claim. Any amounts remaining from Rule 23 Class Members who did not submit a claim were redistributed to the class members who did claim. In summary:

- 949 class members have chosen to participate in the FLSA Collective;

- 242 class members have chosen to participate in Missouri Rule 23 Class;

- No individuals have chosen to exclude themselves from the case; and

- No individuals assert an objection.

Under these circumstances, where the settlement has been well-received and the Court already indicated that it was likely to approve the Settlement, the Court should readily grant final approval of the Settlement.

## I.     Facts and Procedural History Since Preliminary Approval of the Settlement.

After preliminary approval of the Settlement, the Settlement Administrator sent notice via first class mail and also emailed notice to class members for whom an email address was known. *See* Exhibit 1 (Cofinco Declaration). In addition, the Settlement Administrator skip traced addresses for all class members, and for individuals whose addresses were undeliverable, the Settlement Administrator performed further investigations to resend notice. *Id.*

After preliminary approval, the parties provided a class list to the Settlement Administrator and the members of the Class were identified and sent class notice.

The main terms of the agreement are as follows:

- The Settlement creates a Gross Settlement Fund of $550,000.00 to resolve the claims of the FLSA Collective and the Missouri Rule 23 Class.

- Settlement amounts allocated to Missouri state law Class Members who did not submit a claim will be redistributed to those participating in the Settlement; none of the settlement funds revert to Corizon.

- The FLSA plaintiffs will release all federal and state Wage and Hour Claims. The Missouri state law Class members will release all Missouri state Wage and Hour Claims. The release is limited by the facts alleged in this lawsuit.

2

- Detailed notices were mailed and emailed to class members[2] after preliminary approval of Settlement apprising class members of, among other things:

  - their individual settlement amounts,
  - their right to object to the settlement,
  - their right to opt out of the settlement, and
  - the procedure for claiming monies.

- Attorneys' fees will comprise one-third of the Gross Settlement Fund ($183,333.33). No class member has objected to this award.

- Service awards in a total amount of $17,000 will be paid. No class member has objected to these awards.

- Costs of $54,455.53 will be paid. No class member has objected to these costs.

A total of over 949 FLSA Class Members and 242 Missouri Class Members will receive settlement funds.

No Class Member has objected to the Settlement, including the service awards or Class Counsels' fees and costs.

## II.     Question Presented

Should the Court approve the Settlement when it has been well received by the class; is fair, reasonable and adequate; and provides an immediate benefit to the class members?

## III.    Argument

### A.     Approval of the Opt-Out Class Settlement.

FRCP 23(e) requires a Court to determine whether a final settlement binding upon class members is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court considers "the settlement, taken as a whole," rather than its component arts. *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1333 (E.D. Mo. July 24, 1995)

---

[2] *See* Generally Exhibit 1 (Cofinco Declaration).

3

("it has been recognized that 'the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned'") (citing *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Approval of a Rule 23 class settlement involves a two-step process. Manual for Complex Litigation, § 21.632 (4th ed. 2004); § 4:2. Overview of Class Actions, Newberg on Class Actions § 4:2 (5th ed.). The first step was completed when the Court granted preliminary approval of the settlement and ordered notice to be sent to the class. In the second and final step, the Court takes into consideration the notice provided to class members and any objections raised. 7B Fed. Prac. & Proc. Civ. § 1797.5 (3rd. ed.). "Ultimately, the court must examine whether the interests of the class are better served by settlement than by further litigation." *Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-00201-CV, 2012 WL 860395, at *1 (W.D. Mo. Mar. 13, 2012). Having provided notice pursuant to the approved plan and the absence of objectors, the parties request that the Court grant final approval of the Rule 23 settlement.

1.      **The Proposed Settlement Enjoys an Initial Presumption of Fairness.**

As discussed fully in Plaintiffs' Unopposed Motion for Preliminary Settlement Approval, "[t]he law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990). *See also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("[A] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial

4

judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. June 30, 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3rd Cir. 1995)).

## 2. Analysis of the Applicable Factors Favors the Settlement.

When evaluating the fairness of the settlement, the Rule 23(e)(2) factors are:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
  (i)  the costs, risks, and delay of trial and appeal;
  (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
  (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

According to the Advisory Committee notes: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." 2018 Advisory Committee Notes.[3] As previously discussed in Plaintiff's Unopposed Motion for Preliminary Settlement Approval, these factors weigh in favor of finding the proposed Settlement fair, reasonable, and adequate in this case. [4]

---

[3] When considering the fairness of both Rule 23 and FLSA class settlements, courts have considered the following factors: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object [final approval stage]; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Sanderson*, 2011 WL 5822413, at *3.

[4] For sake of brevity, Plaintiff does not address the Rule 23(e)(2) factors again in their entirety, and directs the Court to Plaintiff's Unopposed Motion for Preliminary Settlement Approval and Approval of Attorneys' Fees and Costs. (Doc. 254 at pp. 5-17).

### a) The class representatives and class counsel have adequately represented the class.

Since the case was filed in 2019, the class representatives and Class Counsel have adequately represented the class. First, Class Counsel are highly experienced in the area of wage and hour and class action litigation. They have tried wage and hour class actions to verdict and prosecuted and settled numerous others. Moreover, they have diligently prosecuted this case for over two and a half years, handling, among other things, motions to dismiss, discovery disputes, class certification motions and hearings, and depositions. Similarly, the class representatives have done everything asked of them, and more, including sitting for contentious depositions, providing written discovery to Corizon, and participating in mediation and settlement.

### b) The proposal was negotiated at arm's length.

The Settlement was fairly and honestly negotiated. "The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.*, Civil No. 05-cdv-01567-WYD-BNB, 2008 U.S. Dist. LEXIS 13069, at *15 (D. Colo. Feb. 11, 2008) (unpublished) (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)).

This case was highly contested. Defendants contested personal jurisdiction, the merits of the case, and Rule 23 certification. On July 14, 2020, the parties mediated the case with Honorable Ray Price, Jr. but the mediation failed. Nearly two years later, the parties mediated the case again with the assistance of David Vogel, a well-recognized labor and employment law mediator. Although a settlement was not reached, the parties were able to significantly narrow the gaps between their respective positions and subsequently reached an agreement through a series of follow-up negotiations. All proceedings and negotiations have taken place at arm's length.

6

> c) **The relief provided for the class is adequate taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing Class Member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment.**

This Settlement provides significant relief to Class Members that compensates them fairly for their alleged unpaid time in light of the risks and delay at issue.

### i. The costs, risks, and delay of trial and appeal.

The parties naturally dispute the strength of the Plaintiffs' case, and the Settlement reflects the parties' compromise of their assessments of the worst-case, and best-case, scenarios, and weighing the likelihood of various potential legal and real-world outcomes. Plaintiffs' best-case scenario is a denial of decertification, surviving summary judgment recovery on the merits, prevailing on the merits, and upholding the award on appeal. Plaintiffs' worst-case scenario is that one or both of the classes is decertified, summary judgment is granted to Defendants, and/or Plaintiffs lose at trial or on appeal. Even if this case were to proceed to trial, and Plaintiffs prevailed on the question of liability, substantial questions may remain as to the measure of damages and the entitlement of each FLSA plaintiff and Missouri state law Class Member to recover. Although Plaintiffs believe strongly in the merits of their claims, the great number of uncertainties in ultimately prevailing and calculating class damages makes it difficult to predict how the Court/jury would make an assessment and award.

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would consume great time and expense. The remaining discovery, summary judgment and decertification briefing, damages calculations, trial and appeal would consume significantly more time and resources.

7

On the other hand, the Settlement ensures proportional recovery based on specific timekeeping and payroll data. In light of the many uncertainties still pending in the litigation, this equitable and certain recovery is highly favorable, and weighs in favor of approving the proposed Settlement. The Settlement brings monetary value to Settlement Class Members now, rather than uncertain value to an unknown number of people at an uncertain time after protracted litigation involving complex and novel questions of law.

  **ii. The effectiveness of any proposed method of distributing relief to the class, including the method of processing Class Member claims.**

"[T]he the mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Evans & Green, LLP v. That's Great News, LLC*, 2012 WL 4888471 at \*4 (W.D. Mo. Oct. 15, 2012) (citation omitted). "The United States Supreme Court has stated notice must 'apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 211 (W.D. Mo. March 14, 2017), aff'd, 896 F.3d 900 (8th Cir. 2018) (citation omitted). "[N]otice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal quotations and citation omitted). "What constitutes the best notice practicable under the circumstances depends on several factors, including the size of the class, whether the class members can be easily identified, and the probability that notice will reach the intended persons." *Barfield v. Sho-Me Power Elec. Co. op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at \*13 (W.D. Mo. July 25, 2013) (citation omitted).

Here, notice of the Settlement has been sent to eligible Class Members via mail and email by the settlement administrator, CPT Group, and notice was resent to individuals whose original notice was returned as undeliverable. The Notice advised eligible Class Members of their right to participate in the settlement, their approximate monetary recovery, and the scope of the claims released. The Notice further included a web address that provides eligible Class Members access to a copy of the Settlement Agreement. *See Cooper v. Integrity Home Care, Inc.*, No. 4:16-CV-1293-DGK, 2018 WL 3468372, at *7 (W.D. Mo. July 18, 2018) (court approved mail and email as methods to notify class members of litigation). The information provided in the Notice was sufficient to inform putative Class Members of their rights and obligations in the litigation. The Notice clearly indicated that each eligible Missouri Rule 23 Class Member had the right to opt-out of the litigation. The Notice also clearly indicated that each Missouri Rule 23 Class Member had the right to make a simple claim if they would like to be a part of the settlement. All Class Members were advised of the specific minimum amount they would receive under the Settlement on their Notice.

Further, amounts unclaimed by Rule 23 Class Members were redistributed to the Net Settlement Fund and reallocated to both the FLSA Collective and Rule 23 Class Members who claimed their benefit under the Settlement.

### iii. The terms of any proposed award of attorneys' fees, including timing of payment.

As part of the preliminary approval motion, Plaintiffs requested, and Defendants did not oppose, attorneys' fees in the amount of one-third of the Gross Settlement Fund in addition to reasonable and necessary expenses in the amount of approximately $54,455.53. These amounts were provided to the Class Members in the Notice and no Class Member has objected to the requested fees and costs. Class Counsel's request constitutes one-third of the common fund.

9

Here, one-third of the final Gross Settlement Amount (or $183,333.33) of the settlement fund is well within the reasonable range of attorney fee awards. As provided in Plaintiffs' Unopposed Motion for Preliminary Settlement Approval and Approval of Attorneys' Fees and Costs (Doc. 254), Class Counsel have spent significantly more time working on the case than will be recovered. *See* Dirks and Burger Declarations, attached as Exhibit 2 to Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and For Attorneys' Fees.

Finally, Plaintiffs' out-of-pocket costs, which included two mediations, numerous depositions, deposition transcripts, significant payroll and damages expert costs and other expenses necessary and reasonable to prosecute this case are $54,455.53 and should be approved.

        **iv.**    **Any agreement required to be identified under Rule 23(e)(3).**

No such agreement exists.

      **d)**    **The proposal equitably distributes settlement funds.**

The Settlement treats FLSA plaintiffs and Missouri state law Class Members fairly and equitably. No members of the FLSA collective or the Rule 23 Class are treated more advantageously than another within their class. Indeed, the Settlement payment formula takes into account each FLSA plaintiff's and Missouri state law Class Member's shifts, weeks worked, and individual pay records within the applicable statute of limitations. Thus, the more shifts worked, the more he or she will receive. But no one will receive special treatment, except those deservingly receiving "Service Awards."

      **3.**    **The Experience and Views of Counsel.**

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation. *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. July 8, 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed.1997)). A presumption of fairness, adequacy and

reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Id.*

Although the Court is not bound by counsels' opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson*, 2011 WL 5822413, at *3–4 (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the class had the benefit of attorneys who are highly experienced in complex wage and hour litigation as well as class actions, familiar with the facts and law in the case, and who have negotiated many class and collective action settlements. Likewise, Defendants retained experienced counsel that could successfully navigate complex litigation in the wage and hour context.

The litigation was at all times hard-fought. The negotiations in this case were also hard-fought and at arm's length. In Plaintiffs' Counsel's view, the Settlement provides substantial benefits to the class, especially when one considers, among other things, the attendant risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

### 4. The Opinions of Class Members.

The opinions of class members, expressed through claims, objections, opt-outs, and silence, represent the most important "new" information available for final, rather than preliminary, settlement. The reaction of the Class has been supportive of the Settlement. As noted above, no Class Member has lodged an objection or excluded himself or herself from the Settlement; and Class Members are looking forward to receiving settlement checks as soon as possible.

But where, as here, no Class Member is objecting and no Class Member chose to opt-out of the litigation, final approval is eminently appropriate. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559 4:03-MD-015, 2004 WL 3671053, at *17-18 (approving final

settlement agreement where 0.0007% of the class objected to the settlement). Indeed, "[t]he district court has a duty to the silent majority as well as the vocal minority," and the silence of notified class members is construed as support. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). The fact that no Cass Member objected and no Class Member opted-out, weighs in favor of final settlement approval.[5]

**B.      The Court Should Approve the Requested Service Award.**

Plaintiffs seek a service payment for the Named Plaintiffs, as well as other Class Members, who provided invaluable services to the group. The requested services awards are as follows: Named Plaintiffs: Jessica Williams, Sheryl Fritz, and Jamie Terry ($5,000 each), and FLSA Plaintiffs Hannah Dossey and Sharon Patterson, who sat for depositions ($1,000 each). No Class Member has objected to the proposed service awards.

These individuals worked with Class Counsel before and throughout this litigation in pursuing these claims on behalf of Class Members. These Service Awards are being sought in recognition of the efforts made to pursue the claims raised in this Litigation on behalf of the Class, including sitting for depositions and providing factual information and otherwise assisting Class Counsel with the prosecution of the litigation. This service provided necessary evidence for the parties, counsel, and the Court, furthering the interests of the class as a whole. Named Plaintiffs

---

[5] Final approval may be warranted even where a substantial number of class members object to or opt-out of a settlement. "Courts often consider the number of objectors in determining whether the settlement is fair to the entire class." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559 4:03-MD-015, 2004 WL 3671053, at *13 (W.D. Mo. Apr. 20, 2004). "A court may consider whether the number of objectors is large when compared to the class as a whole." *Id.* (citing 4 Newberg on Class Actions § 11:48 (4th ed. 2002)). *See also Marshall*, 787 F.3d at 513–14 (affirming final settlement approval over the objections of six of twenty-three class representatives where less than ten percent of class members had in fact opted out); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (affirming settlement approval over the objections of nearly half of the class members); *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226 (8th Cir. 1982) (affirming settlement approval over the written objections of 790 of approximately 3,000 class members, including both named plaintiffs, noting that "[t]he vast majority approved the settlement.").

and the other Class Members responded to discovery, sat for depositions, and participated in mediation and settlement. Additionally, these individuals took a risk by joining the litigation in the first place. The Named Plaintiffs particularly faced risks when joining the litigation because they risked retaliation for participation in the wage claims. Further, the Named Plaintiffs will forever be subject to background checks on employment applications, and there is risk that if an employer learns of their previous litigation, it may be less likely to hire them. Plaintiffs respectfully request that the service awards be approved.

Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit that aids the common benefit of others warrants a service award above-and-beyond what the typical class member is receiving. *See Wolfert v. UnitedHealth Group, Inc.,* No. 4:08-CV-01643 (E.D. Mo. Aug. 21, 2009) (Doc. 38) (approving a service award of $30,000); *Flores v. Anjost Corp.*, No. 11-cv-1531, 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014) (approving $25,000 service awards for five named plaintiffs in FLSA settlement after three years of litigation); *Capsolas v. Pasta Res. Inc.*, No. 10-cv-5595, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (approving $20,000 service award for named plaintiff in tip credit case settlement after two years of litigation); *Willix v. Healthfirst, Inc.*, No. 07-CV-1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation); *Matheson v. T-Bone Rest., LLC*, No. 09-CV-4214, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in tip pool/OT case settlement after two and a half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, No. 05-CV07993, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of litigation); *Duchene v. Michael Cetta, Inc.*, No. 06-CV-4576, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving $25,000 service award

13

to named plaintiff in tip pool case settlement after three years of litigation). Accordingly, Plaintiffs' request falls within a fair range of service awards.

## CONCLUSION

The Settlement presented is an immediate, real, substantial, and fair settlement. Plaintiffs, therefore, respectfully request that the Court approve the Settlement in whole and without delay.

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Eric L. Dirks
Eric L. Dirks   MO Bar No. 54921
Amy R. Jackson MO Bar No. 70144
1100 Main Street, Suite 2600
Kansas City, MO  64105
(o) 816-945-7110
(f) 816-945-7118
dirks@williamsdirks.com
amy@williamsdirks.com

**BURGER LAW FIRM, LLC**

/s/ Gary K. Burger, Jr.
Gary K. Burger, Jr. MO Bar No. 43478
Genavieve Fikes, MO Bar No. 62886
500 North Broadway, Suite 1860
St. Louis, MO 63102
Phone: (314) 542-2222
Fax: (314) 542-2222
gary@burgerlaw.com
genavieve@burgerlaw.com

***Attorneys for Plaintiffs***

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 16, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record, and via electronic mail to:

Patrick F. Hulla
Darin P. Shreves
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, MO  64111
Telephone:  816-471-1301
patrick.hulla@ogletreedeakins.com
darin.shreves@ogletree.com

Mallory Zoia
James M. Paul
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
7700 Bonhomme Avenue, Suite 650
St. Louis, MO  63105
Telephone:  314-802-3935
mallory.zoia@ogletree.com
james.paul@ogletreedeakins.com

**ATTORNEYS FOR DEFENDANTS
CORIZON HEALTH, INC. AND CORIZON, LLC**

/s/ Eric L. Dirks
Eric L. Dirks